*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 10, 2014                    517707
_____

MOHONK PRESERVE, INC.,
                    Respondent,

        v                                    MEMORANDUM AND ORDER

CHRISTOPHER E. ULLRICH et al.,
                    Appellants.
_____


Calendar Date:  June 5, 2014

Before:  Lahtinen, J.P., McCarthy, Rose, Lynch and Devine, JJ.

                    _____


        Graff Law, LLC, Kingston (Sharon A. Graff of counsel), for
appellants.

        Kellar Kellar & Jaiven, Kingston (Paul T. Kellar of
counsel), for respondent.

                    _____


McCarthy, J.

        Appeals (1) from an order of the Supreme Court (Cahill,
J.), entered April 18, 2013 in Ulster County, upon a decision of
the court in favor of plaintiff, and (2) from the judgment
entered thereon.

        Plaintiff is a not-for-profit organization, founded in 1963
as the Mohonk Trust, that exists primarily to protect and manage
land in the Shawangunk Mountains that it holds in trust for the
public.  In 1981, defendant Thomas E. Marks and his former wife
purchased a parcel adjoining plaintiff's property.  In 2005,
Marks and his current wife, defendant Helen G. Ullrich, who was
by then a co-owner of the parcel, sold that same parcel to
defendants Christopher E. Ullrich and Sarah C. Emond (hereinafter
collectively referred to as the current owners).  That same year,

a dispute arose when plaintiff's employees observed that signs had been removed and trees had been cut near the current owners' southern and plaintiff's northern boundary. In 2009, plaintiff commenced this action, pursuant to RPAPL article 15, to, among other things, establish the boundary line in accordance with a survey it had commissioned and to obtain a preliminary injunction prohibiting defendants from trespassing or despoiling its land. Defendants answered and thereafter presented their own survey. Although the survey was in substantial agreement with plaintiff's survey regarding the originally disputed boundary line, it also depicted that the current owners owned a substantial portion of property that is northwest of their property as depicted in plaintiff's survey. According to plaintiff's survey, that disputed area was on a parcel of land that plaintiff purchased in 2010. Soon after that purchase, an additional conflict arose surrounding allegations that the current owners had also removed timber from this disputed portion of land. Thereafter, plaintiff filed an amended complaint seeking to additionally establish the boundary lines for its newly-acquired parcel in accordance with its surveys and to obtain a preliminary injunction to prevent defendants from entering that parcel. Defendants counterclaimed, seeking, among other things, to establish the disputed boundary lines in accordance with their survey. After a nonjury trial, Supreme Court entered an order and judgment finding that, among other things, plaintiff's survey was controlling as to the disputed boundary lines and awarding plaintiff damages for 49 trees cut from its property.[1] Defendants now appeal.

Supreme Court did not err in crediting plaintiff's survey as establishing the relevant boundary lines. Upon review of a verdict following a nonjury trial, this Court, while granting deference to Supreme Court's credibility assessments, has the authority to independently review the evidence and grant the judgment that such evidence warrants (see Henshaw v Younes, 101 AD3d 1557, 1560 [2012]; Krol v Eckman, 305 AD2d 709, 710 [2003]).

_____

[1] Although the order specifies that Supreme Court awarded damages for 31 trees, the monetary award, as confirmed in the judgment, indicates that the court actually provided damages for 49 trees.

In an action to quiet title, the plaintiff bears the burden of proving his or her claim by a preponderance of the evidence (see Glenn Acres Tree Farm, Inc. v Town of Hartwick Historical Socy., Inc., 84 AD3d 1529, 1529-1530 [2011]). In the context of a boundary dispute, deeds must be construed in accordance with the parties' intent and extrinsic evidence is admissible to clarify any ambiguities (see Henshaw v Younes, 101 AD3d at 1559; Schweitzer v Heppner, 212 AD2d 835, 838 [1995]). Further, references to "'natural landmarks and artificial monuments take precedence over mere metes and bounds descriptions'" (Brown v Ames, 290 AD2d 693, 694 [2002], quoting Zelnik Realty v York, 170 AD2d 926, 928 [1991]).

Initially, we agree with both parties' concessions at trial that, despite consideration of over 150 deeds, some stretching back into the 1700s, independent documentary evidence does not conclusively establish the disputed boundary lines. Accordingly, the record before us illustrates that each parties' expert witnesses necessarily relied on incomplete, ambiguous and sometimes even self-contradictory descriptions of relevant parcels when they drafted surveys showing the alleged placement of the disputed boundary lines. Considering this imperfect documentary evidence, the resolution of the dispute, in large part, turned on the credibility of each parties' expert witnesses' testimony in regard to the proposed surveys (see e.g. Levy v Braley, 176 AD2d 1030, 1032 [1991]).

Supreme Court made numerous findings that testimony regarding the production of plaintiff's survey was more credible than the testimony regarding the production of defendants' survey. Plaintiff's surveyor, Richard Brooks, testified that the survey he produced was certified as being in accordance with the standards of the New York State Licensed Professional Land Surveyors, and he noted that the most recent draft of the survey contained notations describing the changes made in each of the six revisions that he had made to incorporate newly-acquired information since his original draft in 2006. In contrast, the surveyor who produced defendants' survey, Rodney Knowlton, did not testify that his survey was certified to any professional standards. Even more strikingly, Knowlton acknowledged that he had created earlier survey drafts, but that he had discarded each

upon Christopher Ullrich's disapproval of the results of those surveys. Notably, defendants did not provide any additional evidence that could be reasonably interpreted as clarifying what revisions were made to defendants' survey or whether they would generally be accepted as permissible within the professional surveying community.

Further, although Knowlton acknowledged that a survey should depict improvements made to land, he also admitted that his survey did not contain improvements on portions of the contested land, such as a driveway, a septic tank, a wellhead and power utility poles, all of which were noted on plaintiff's survey.[2] In addition, defendants' survey failed to depict conflicting boundaries as depicted in senior surveys, failed to depict numerous pieces of hardware and markings left by previous surveyors and failed to clearly label parcels by their current owners, all of which, according to various testimony by expert witnesses for plaintiff, departed from generally accepted professional practices.

In addition, Knowlton's credibility was drawn further into question based on the introduction of certain highly reliable documentary evidence that contradicted certain of his conclusions. Multiple witnesses, including Knowlton on cross-examination, agreed that defendants' survey had omitted a certain lot by doubling the width of a different lot, a decision that directly contradicted uncontroverted evidence from a field book and map dating back to 1793. In addition, despite the fact that at least 12 deeds in the chain of title for one nearby parcel called for a boundary line as a ledge of rocks, Knowlton instead used a stone wall that was never mentioned in any deed for the parcel as marking that boundary line. Not only did Knowlton ignore the repeatedly noted landmark for this boundary line, but he did so despite the fact that use of the ledge boundary line was relatively consistent with the purported acreage of the

---

[2] Although not germane to the instant discussion, the visibility of improvements was relevant to the issue at trial of whether plaintiff, in any event, had established ownership of disputed portions of land by adverse possession.

parcel contained in various deeds, whereas use of the stone wall decreased the acreage of the parcel by over a quarter from such purported acreage.

Moreover, defendants failed to provide an adequate account of how evidence relating to the current owners' chain of title fit into Knowlton's depiction of their property. Although acreage is not necessarily a compelling factor on its own, none of defendants' expert witnesses provided a reasonable explanation for the significant discrepancy between the acreage provided for in the current owners' deed and the acreage that defendants' survey attributed to the current owners, which was over four times greater than that described in the deed. Given the additional evidence that defendants' survey depicted multiple parcels as also significantly departing from the acreage described in respective deeds, it is appropriate to consider the failure of defense witnesses to adequately explain how such widespread errors would have remained uncorrected in later deeds and surveys (see Levy v Braley, 176 AD2d at 1033).

Finally, Supreme Court properly rejected defendants' central contention that a defect in plaintiff's survey caused it to place various parcels approximately 660 feet too far to the south. As to this point, both parties opined as to the location of the Benjamin Freer lot, a parcel of land eventually acquired by plaintiff and which bordered the current owners' parcel to the north. An 1837 deed describing the lot provides for an eastern boundary along a road that, as it travels north, bends eastward. While plaintiff's survey places the Freer parcel's eastern boundary along a point in the road that contains a bend substantially similar to the 1837 description, defendants' survey placed the Freer lot further north along the same road at a point that, as Knowlton conceded, does not match the described curvature. In light of this evidence, and providing deference to Supreme Court's assessments of the various experts' credibility, the court's finding that plaintiff's survey established the disputed boundary lines was warranted (see Leitch v Jackson, 243 AD2d 873, 874 [1997]; Schweitzer v Heppner, 212 AD2d at 839; Stratton v Keefe, 191 AD2d 871, 873 [1993]; Fletcher v Flacke, 97 AD2d 623, 623-624 [1983]).

However, Supreme Court erred in awarding damages to plaintiffs for trees cut by Christopher Ullrich in 2005. Under RPAPL 861, an owner may recover treble the stumpage value of a tree, $250 per tree or both when, without the owner's consent, any person cuts or removes a tree from the owner's land. CPLR 214 (4) provides that an action to recover damages for injury to property is subject to a three-year statute of limitations (see Mandel v Estate of Frank L. Tiffany, 263 AD2d 827, 829 [1999]).[3] Here, evidence was presented that Christopher Ullrich admitted to cutting 31 trees in 2005, all later determined to be within plaintiff's parcel. As this case was commenced in 2009, the cause of action with respect to the 31 trees was time-barred. On the other hand, the cause of action seeking damages for the trees that were cut in 2010 is not time-barred. Considering the testimony from an employee of plaintiff that he determined that the 18 trees were cut after plaintiff acquired ownership of the parcel in 2010 and that Christopher Ullrich had admitted to cutting those trees, we see no reason to disturb that portion of Supreme Court's determination.

Defendants' remaining contentions are rendered academic by this decision.

Lahtinen, J.P., Rose, Lynch and Devine, JJ., concur.

---

[3] To the extent that Ton-Da-Lay, Ltd. v Friedman (75 AD2d 976, 977 [1980]) asserts that RPAPL 861 claims are subject to a six-year statute of limitations, it should not be followed.

ORDERED that the order and judgment are modified, on the law, without costs, by reducing the damages that defendants owe to plaintiff for cut trees to $4,500, and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court