◼ SHELDON M. SHATTUCK et al., as Trustees of the SHELDON M. SHATTUCK REALTY TRUST, Respondents, v DAVID LAING, Defendant, and RUTH LAING, Appellant. [2 NYS3d 261]—

Garry, J. Appeal from an order and judgment of the Supreme Court (Buchanan, J.), entered August 20, 2013 in Essex County, upon a decision of the court in favor of plaintiffs.

Plaintiffs own real property in the Town of Ticonderoga, Essex County that has belonged to their family for several generations. In 1981, defendants acquired a parcel of real property that borders plaintiffs' land on the west. A boundary dispute ensued and, in 2005, plaintiffs commenced this action pursuant to RPAPL article 15 seeking, as pertinent here, a judicial determination as to the location of plaintiffs' westerly property line. Following a nonjury trial, Supreme Court issued an order and judgment in plaintiffs' favor, finding that the disputed boundary is located in the center of an abandoned dirt road as indicated in a survey submitted by plaintiffs. Defendant Ruth Laing (hereinafter defendant) appeals.[1] Defendant's contention that she was entitled to judgment in her favor on the basis of laches is

1. The action was commenced against both defendants, Ruth Laing and David Laing, who acquired their property as tenants by the entirety. David Laing passed away before the trial, and his rights and obligations in the action devolved by operation of law to Ruth Laing (*see* CPLR 1015 [b]).

unpreserved (*see Precision Founds. v Ives*, 4 AD3d 589, 592 n 2 [2004]) and, in any event, she offered no proof of prejudice (*see Matter of Barabash*, 31 NY2d 76, 81-82 [1972]). Supreme Court's failure to adjourn the trial for the testimony of the County Clerk was not an abuse of discretion; no such adjournment was requested, and it appears from the record that defendant had failed to plan for an appearance by this official despite ample opportunity to do so. Defendant has not demonstrated that the Clerk would have been able to provide relevant testimony, nor that the evidence in question could not have been obtained by the exercise of due diligence (*see Matter of Steven B.*, 6 NY3d 888, 889 [2006]; *Matter of Owens v Chamorro*, 114 AD3d 1037, 1038-1039 [2014]).[2] Nor did the court err in sustaining an objection to the entry of a document as a business record in the absence of any foundational testimony (*see* CPLR 4518 [a]).

Addressing the merits, in reviewing a verdict after a nonjury trial, this Court may independently review the evidence and, while deferring to the trial court's credibility assessments, grant the judgment warranted by the evidence (*see Mohonk Preserve, Inc. v Ullrich*, 119 AD3d 1130, 1131 [2014]; *Krol v Eckman*, 305 AD2d 709, 710 [2003]). In a boundary dispute, deeds are to be construed based upon the intent of the parties, and parol evidence may be considered to clarify any ambiguity (*see* Real Property Law § 240 [3]; *Mohonk Preserve, Inc. v Ullrich*, 119 AD3d at 1131; *Henshaw v Younes*, 101 AD3d 1557, 1559 [2012]).

The parties agree that the relevant documents for determining the location of the western boundary of plaintiffs' parcel are two deeds dated in April 1885 and August 1885. The earlier document is a handwritten warranty deed that identifies nine grantors of the parcel now owned by plaintiffs, but is signed by only eight of them. The later document, also handwritten, is a quitclaim deed signed by the ninth grantor. Both deeds were recorded in 1904 along with a typed transcription of the earlier deed that reads, in pertinent part, "the west line to be far enough west [and] parallel to the East line) to include fourteen (14) acres—14 acres being the covenant of land hereby conveyed, more or less the west line aforesaid being a public highway" [single parenthesis in original]. The handwritten version of this deed differs from the typed version in that a handwritten mark appears after the phrase "more or less" and before the phrase "the west line," which is not present in the typed version, and

---

**2.** Defendant sought testimony regarding discrepancies between typed and handwritten versions of a deed; both versions of the deed were available to defendant before trial, as they had been attached as exhibits to the 2005 summons and complaint.

which plaintiffs contend—and Supreme Court found as a fact—is a comma. The parties' disagreement centers upon the significance of this difference. Plaintiffs assert that the mark in the handwritten deed is a comma, that the phrase "more or less" qualifies the amount of land conveyed, and that the grantors intended the parcel's western boundary to lie along an old dirt road—a road that can still be identified and that plaintiffs' family traditionally considered to be the property line. Relying upon the typed transcription, defendant contends that the absence of a comma between the phrase "more or less" and the reference to a public highway indicates that the phrase does not qualify the amount of acreage conveyed, and instead was intended to convey that the western boundary was not precisely located along the referenced public highway. Defendant argues that the grantors intended the western boundary to be located such that the total amount of land conveyed was 14 acres, without regard to whether the precise location of the boundary coincided with a public highway.

We agree with Supreme Court that as between the handwritten and typed versions of the April 1885 deed, the handwritten deed is the best evidence of the grantors' intent, as it is the signed original instrument by which the disputed property was conveyed, while the typed version is an unsigned copy created decades later by an unknown transcriber (*see* Jerome Prince, Richardson on Evidence §§ 10-101, 10-102 [Farrell 11th ed 1995]). We further agree with the court that the disputed mark following the phrase "more or less" in the handwritten deed appears to be a comma; although it is oddly located on the line below the phrase "more or less" and outside the document's left margin, it has the same shape as other commas in the deed, including a mark just before the phrase "more or less," which the parties agree is a comma and which is represented by a comma in the typed version. Nevertheless, the questionable nature of the disputed mark creates an ambiguity that may be clarified by considering extrinsic evidence of the grantors' intent (*see Eliopoulous v Lake George Land Conservancy, Inc.*, 50 AD3d 1231, 1232-1233 [2008]). Accordingly, we turn to the August 1885 deed that conveyed the ninth grantor's remaining interest in the same parcel, in which the corresponding portion of the property description reads as follows: "Westerly by the public highway, the said lot containing 14 acres more or less." In this version, created only a few months after the disputed deed, the phrase "more or less" clearly references the amount of acreage conveyed and not the location of the western property line, which is identified without qualification as "the public highway." The plain language of this document supports

plaintiffs' construction of the earlier April 1885 deed. Thus, upon our independent review, we agree with Supreme Court's conclusion that it was the grantors' intent to qualify the amount of acreage conveyed rather than the location of the western boundary with the phrase "more or less" and that they intended to locate the disputed boundary line along a then-existing public highway.

Discrepancies nevertheless remain, as placing the boundary line along the road that plaintiffs now contend is the referenced "public highway" results in a parcel larger than the 14 acres referenced in the 1885 deeds—and no party provided historical evidence of a public highway existing in 1885 that would create a 14-acre parcel. Where such discrepancies exist in property descriptions, "the rules of construction require that resort be had first to natural objects, second to artificial objects, third to adjacent boundaries, fourth to courses and distances and last to quantity" (*Thomas v Brown*, 145 AD2d 849, 850 [1988]; *see Mohonk Preserve, Inc. v Ullrich*, 119 AD3d at 1131; *Henshaw v Younes*, 101 AD3d at 1560).[3] According to these rules, a public highway or other artificial monument takes precedence over the amount of acreage specified in a deed, as "quantity is the least reliable of all descriptive particulars" (*Lougaris v Spilio*, 204 AD2d 775, 776 [1994] [internal quotation marks, brackets and citations omitted]; *see Pauquette v Ray*, 58 AD2d 950, 952 [1977]; *see also County of Erie v Bourne*, 59 AD2d 1008, 1008 [1977], *appeal dismissed* 43 NY2d 947, 950 [1978]). Thus, the resolution of the parties' dispute depends on the location of the public highway rather than the amount of acreage referenced in the 1885 deeds.

The parties each presented expert testimony from licensed surveyors. John Grady testified for plaintiffs that he surveyed their property and found evidence of only one dirt road in the area, running in front of an old house on plaintiffs' property and across the disputed area. Grady testified that he found trees embedded with old wire fencing along both sides of this road, especially on the western side, as well as large rocks lining the roadsides—features that, in his experience, were characteristic of old public roads in that area and indicated that the road had been in place for many years. He also stated that he found similar old wire fencing embedded in trees along all of the other boundaries of plaintiffs' property, which, according to the testimony of another witness, had formerly been used to contain

---

**3.** Notably, these rules of construction were well established before the disputed deeds were drafted (*see e.g. Wendell v People*, 8 Wend 183, 189-190 [1831]; *Doe v Thompson*, 5 Cow 371, 373-374 [1826].)

grazing livestock. Grady testified that his review of Ticonderoga County highway records revealed that the road that he located had been the subject of a qualified abandonment in 1943 and had previously been a public highway. Plaintiffs introduced the public record of this abandonment into evidence, along with Grady's survey and numerous photographs taken by Grady of the road. In determining the location of the boundary, Grady testified that he reviewed documents that included the April 1885 handwritten deed as well as defendants' 1981 deed, which provided that their property was bounded on the east "by road." He stated that he applied the previously-discussed rules of construction by which the road, as a monument, took precedence over the amount of acreage specified in the 1885 deed. Based upon this rule, as well as his survey and document review, Grady opined that the road he located was the public highway referenced in the April 1885 deed and is now the westerly boundary of plaintiffs' property.

Defendant's surveyor, Daniel Elder, disagreed, testifying that, although he found the road located by Grady when he surveyed the property, he believed that the relevant former highway originally ran through a different area east of the road's present location and was moved to the current dirt road's location because of flooding and steep terrain. However, other than topographical features of the land, Elder offered no evidence supporting the thesis that any public road had ever existed in the alternate location he identified, or that the existing road had been moved. He stated that he saw "on the ground . . . a really old road" in the area where he believed the original road had been, but he offered no photographs of his observations and acknowledged that he did not find physical evidence such as rocks or wire fencing. The location he identified ran through trees and a swampy area. Moreover, he acknowledged that he did not initially determine the placement of the road that he identified as the boundary line by finding natural or artificial monuments on the land, but instead by calculating the location of a straight line that ran parallel to the eastern boundary and resulted in a 14-acre lot—in other words, by relying primarily on the quantity of acreage specified in the deed. Finally, Elder acknowledged that he had relied solely upon the 1904 typewritten transcription of the 1885 deeds and had not reviewed the handwritten version, and he conceded that if the disputed mark on the handwritten April 1885 deed was a comma, the phrase "more or less" would reference the amount of acreage rather than the highway, and would thus support plaintiffs' interpretation of the location of the boundary line rather than his own.

Notably, locating the boundary in the location identified by

Grady leaves defendant with approximately 35 acres on her side of the dirt road—the same amount specified in her 1981 deed, which also provided that this boundary was a "road." For all of these reasons, Supreme Court found that Elder's opinion as to the location of the boundary line was speculative at best, and that Grady's expert opinion was more credible. Granting proper deference to this assessment of the competing credibility of the parties' experts, and considering the totality of the evidence, we find no error in the court's conclusion that the relevant boundary line is the center of the still-existing dirt road, and that plaintiffs hold title to the disputed property (*see Mohonk Preserve, Inc. v Ullrich*, 119 AD3d at 1133; *Henshaw v Younes*, 101 AD3d at 1560; *see generally Thayer v Finton*, 108 NY 394, 397-398 [1888]).

Peters, P.J., Rose and Lynch, JJ., concur. Ordered that the order and judgment is affirmed, with costs.