Petti v Town of Lexington (2018 NY Slip Op 05543)





Petti v Town of Lexington


2018 NY Slip Op 05543


Decided on July 26, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 26, 2018

525272

[*1]CAROLEE PETTI, as Executor of the Estate of ALPHONSE DePAOLO, Deceased, Appellant,
v
TOWN OF LEXINGTON et al., Respondents, et al., Defendants.

Calendar Date: June 6, 2018

Before: Devine, J.P., Clark, Mulvey, Rumsey and Pritzker, JJ.


David E. Woodin, Catskill, for appellant.
Kellar, Kellar & Jaiven, Kingston (Paul T. Kellar of counsel), for Town of Lexington and others, respondents.
Zachary Carter, Corporation Counsel, New York City (Diana Lawless of counsel), for New York City Water Bureau, respondent.



MEMORANDUM AND ORDER
Mulvey, J.
Appeal from a judgment of the Supreme Court (Work, J.), entered October 10, 2016 in Ulster County, upon a decision of the court in favor of defendants.
This appeal concerns whether the public has a right to access a quarter-mile section of a rural roadway shaped like a hairpin (hereinafter the hairpin) located on property held by plaintiff as the executor of the estate of her father, Alphonse
DePaolo. A portion of the hairpin is located in the Town of Lexington, Greene County, and a portion of it is located in the Town of Shandaken, Ulster County. The hairpin is part of an approximately four-mile roadway (hereinafter the road) that was improved by defendant Town of Shandaken in 2000, resulting in an increased flow of traffic through the hairpin. Since that time, the hairpin had been regularly plowed and maintained by the Town of Shandaken and defendant Town of Lexington (hereinafter collectively referred to as the Towns) for use by the general public.
In 2008, plaintiff commenced this action pursuant to RPAPL article 15 seeking to quiet [*2]title to the hairpin [FN1]. Upon a previous appeal, we determined that questions of fact regarding whether the hairpin was utilized by the public and maintained by the Towns for the full 10-year statutory period precluded an award of summary judgment in favor of any party (92 AD3d 1111, 1113-1114 [2012]). We also directed plaintiff to add as defendants all property owners who access their property from the road (id. at 1115). Following a bench trial at which over 20 witnesses testified, Supreme Court issued a judgment in defendants' favor dismissing plaintiff's complaint and finding that the road, including the hairpin, had been continuously used by the public and maintained by the Towns for the requisite 10-year period. This appeal by plaintiff ensued.
When reviewing a nonjury trial verdict, we independently assess "the probative weight of the evidence, together with the reasonable inferences that may be drawn therefrom, and grant the judgment warranted by the record while according due deference to the trial court's factual findings," particularly where, as here, they rest largely on credibility determinations (Frontier Ins. Co. v Merritt & McKenzie, Inc., 159 AD3d 1156, 1159 [2018] [internal quotation marks, brackets and citations omitted]; see M & M Country Store, Inc. v Kelly, 159 AD3d 1102, 1103 [2018]; Shattuck v Laing, 124 AD3d 1016, 1017 [2015]). Upon our review of the record, we find ample support for Supreme Court's determination that the road became a highway by use.
"All lands which shall have been used by the public as a highway for the period of [10] years or more, shall be a highway" (Highway Law § 189). "A highway by use is established by showing that, for at least the statutory period, two conditions have been met: the road at issue was used by the public and the municipality exercised dominion and control over the road. Such a showing requires more than intermittent use by the public and more than occasional road work by the municipality" (92 AD3d at 1112 [internal quotation marks, ellipsis and citations omitted]; see Brandon v Town of Southeast, 150 AD3d 659, 660 [2017]; State of New York v Town of Horicon, 46 AD3d 1287, 1289 n 2 [2007]; Whitton v Thomas, 25 AD3d 996, 997 [2006], lv dismissed 7 NY3d 783 [2006]). The parties do not dispute that since 2000 the road has been used and maintained as a public highway; thus, as was the case when this matter was previously before us, "the issue devolves to whether the hairpin was used by and maintained for the public in 1998 and 1999" (92 AD3d at 1112).
Several neighbors and community members — including some of whom were called by plaintiff herself — explained that the road, including the hairpin, was passable by car during all seasons, except when it had not been plowed in the winter. One witness recalled driving on the road since the early 1940s and estimated that he drove the entire length of the road 6 to 10 times a year. This witness testified that, at all times between the 1940s and 2000, the road was passable by way of a standard motor vehicle. Another resident testified to using the road regularly since the 1960s, including accompanying his wife, a real estate agent, to visit properties along the road. Vincent Bernstein, a Department of Environmental Conservation officer responsible for patrolling in the Town of Shandaken from 1985 to 2006, explained that he would drive along the road approximately twice per week during hunting seasons, as well as during the winter months, and that the road was only difficult to travel during a snowstorm before it had [*3]been plowed [FN2]. The Ulster County Sheriff testified to patrolling the road from 1979 to 2005 and likewise stated that he could traverse the road in his patrol car without any difficulty.
Defendants also presented extensive evidence concerning the Towns' maintenance of the road. Through the testimony of the two individuals who successively served as the Superintendent of Highways for the Town of Lexington from 1988 to 2010, it was established that the road was plowed and sanded during the winter months and that year-round maintenance, including the removal of fallen tree limbs and clearing of ditches, was performed during this time. Testimony from the Superintendent of Highways for the Town of Shandaken, as well as various employees of that Town, revealed that the road had been regraded each spring since at least 1988, and that other measures to maintain the road were undertaken on a regular basis. One of these employees testified to putting in a large culvert under the hairpin, which was thereafter maintained by the Town of Shandaken. Workers from both Towns testified that, pursuant to an informal agreement, the Towns cooperated in maintaining the road. Further, the road is depicted on maps going back as far as 1856, and defendants submitted evidence that the hairpin was listed on the New York State Department of Transportation Local Road Listing inventories for the Town of Lexington since at least 1985.
For her part, plaintiff primarily relied on the testimony of four members of the DePaolo family who asserted that, prior to 2000, the hairpin was unused by motor vehicles and impassible in the winter months. These family members elaborated that the hairpin was never plowed in the winter and that there was no maintenance of the road prior to 2000, and one family member claimed to have personally installed the culvert that passes under the hairpin. Supreme Court, however, rejected such testimony in favor of the contrary testimony and documentary evidence proffered by defendants, noting that the testimony of the DePaolo family members "seemed rehearsed."[FN3] On this record, we find no basis upon which to disturb that credibility assessment (see MacKinnon v Croyle, 72 AD3d 1356, 1358 [2010]; Bartz v Hewitt, 296 AD2d 723, 724 [2002]). Although plaintiff further asserts that the use of the road was interrupted one weekend in 2000 when a member of the DePaolo family hung a chain across the hairpin, there was no proof adduced at trial that "'[this] temporary device[] ever effectively interfered with, or disturbed, [the public's] continuous use of the [road]'" (Posnick v Herd, 241 AD2d 783, 785 [1997], quoting Reed v Piedimonte, 138 AD2d 937, 937 [1988], lv denied 72 NY2d 803 [1988]; see Caswell v Bisnett, 50 AD2d 672, 673 [1975], lv denied 38 NY2d 709 [1976]). Indeed, the scant evidence presented on this issue at trial revealed that the chain was promptly removed by the Sheriff in response to a call regarding its presence. In any event, even assuming that the chain did successfully interrupt the road's continuous use as of 2000, the evidence proffered by defendants at trial and credited by Supreme Court established a 10-year period of continuous use well prior to that time. Based upon our independent evaluation of the evidence and giving due deference to the court's credibility determinations, we conclude that a preponderance of the [*4]evidence supports Supreme Court's determination that the road has been continuously used by the public and consistently maintained by the Towns for the required 10-year period (see Highway Law § 189; Egan v Halverson, 271 AD2d 844, 846 [2000]; Town of Dresden v Voutyras, 244 AD2d 779, 780-781 [1997]; LaSalle Co. v Town of Hillsdale, 199 AD2d 685, 686 [1993]; Provencher v Town of Saranac, 168 AD2d 770, 770 [1990]).
Devine, J.P., Clark, Rumsey and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: Plaintiff also commenced an action seeking damages for continuing trespass. Although the two actions were initially consolidated, they were subsequently severed and the ensuing nonjury trial that is the subject of this appeal pertained solely to the RPAPL article 15 action.

Footnote 2: As we noted in the prior appeal, the fact that the road was not always traversable due to snow in the winter does not defeat its use as a public highway (92 AD3d at 1113; see e.g. Matter of Smigel v Town of Rensselaerville, 283 AD2d 863, 865 [2001]; Egan v Halverson, 271 AD2d 844, 845-846 [2000]).

Footnote 3: In fact, at one point in the trial, Supreme Court reprimanded a spectator who was "mouthing something" to plaintiff in an apparent attempt to prompt plaintiff to conform her testimony to that of another family member.