Old Timers Rod & Gun Club, Inc. v Wa-A-We Rod & Gun Club, Inc. (2020 NY Slip Op 03575)





Old Timers Rod & Gun Club, Inc. v Wa-A-We Rod & Gun Club, Inc.


2020 NY Slip Op 03575


Decided on June 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 25, 2020

527714

[*1]Old Timers Rod & Gun Club, Inc., Appellant,
v
Wa-A-We Rod and Gun Club, Inc., Respondent, et al., Defendants.

Calendar Date: May 20, 2020

Before: Garry, P.J., Egan Jr., Mulvey, Devine and Colangelo, JJ.


Martin S. Miller, Monticello, for appellant.
Robert M. Rametta, Goshen, for respondent.



Devine, J.
Appeal from a judgment of the Supreme Court (Meddaugh, J.), entered September 11, 2018 in Sullivan County, confirming a referee's decision in favor of defendant Wa-A-We Rod and Gun Club, Inc.
Plaintiff and defendant Wa-A-We Rod and Gun Club, Inc. (hereinafter defendant) own neighboring hunting clubs in Sullivan County. Their properties first entered into private ownership under a colonial-era land grant known as the Minisink Patent, and the line dividing great lot 27 and great lot 28 in the patent is named as the border between plaintiff's and defendant's land. After a dispute arose as to the location of that boundary, plaintiff commenced this RPAPL article 15 action to determine its claims of ownership. Defendant answered and counterclaimed for similar relief. The parties agreed to a nonjury trial before a special referee (see CPLR 4317 [a]), who thereafter issued a decision in which he dismissed plaintiff's complaint and adopted the metes and bounds description set forth by defendant's surveyor. Supreme Court issued a judgment that confirmed and implemented the terms of the special referee's decision, and plaintiff appeals.
We affirm. This Court reviews a nonjury verdict by conducting an independent review of the evidence, affording due deference to the trier's factual findings and credibility determinations, and rendering the judgment warranted by the record (see Grimaldi v Sangi, 177 AD3d 1208, 1209 [2019]; Howell v State of New York, 169 AD3d 1208, 1209 [2019], lv denied 33 NY3d 907 [2019]). In a boundary dispute, it is the intent of the parties at the time of the original conveyance that controls (see Real Property Law § 240 [3]; Lamm v Mauser, 132 AD3d 1120, 1121 [2015]; Shattuck v Laing, 124 AD3d 1016, 1017 [2015]; Gibbs v Porath, 121 AD3d 1210, 1212 [2014]). Plaintiff and defendant agree that their deeds make the boundary of great lots 27 and 28 the border of their respective land; the problem is that the deeds reference earlier deeds or survey maps describing the boundary in a manner that leaves the southeastern corner of plaintiff's land over 400 feet short of where it would be if the boundary ran as described in the field notes of the colonial surveyors who initially subdivided the patent. "Where such discrepancies exist in property descriptions, 'the rules of construction require that resort be had first to natural objects, second to artificial objects, third to adjacent boundaries, fourth to courses and distances and last to quantity'" (Shattuck v Laing, 124 AD3d at 1019, quoting Thomas v Brown, 145 AD2d 849, 850 [1988] [citations omitted]; see Mohonk Preserve, Inc. v Ullrich, 119 AD3d 1130, 1131 [2014]).
The description of the great lot boundary in the field notes is of limited utility insofar as the description uses compass bearings and distances without reference to natural or artificial objects, and the special referee credited the opinions of defendant's expert surveyor and title insurance agent, based upon statements in the field notes themselves, that no survey was performed to create it. In contrast, the description of the boundary in both plaintiff's and defendant's chain of title can be traced back to an 1848 deed that relied upon a survey conducted in 1809. Although records of the 1809 survey cannot now be found, surveyors have placed and located artificial monuments along the boundary described in the 1848 deed, and adjacent landowners have used it to define their own borders. Indeed, the title insurance agent who conducted a records search on defendant's behalf testified that, of the hundreds of property records relating to the boundary that he reviewed, none of them described it in the manner set out in the field notes and embraced by plaintiff. Plaintiff's surveyor suggested that the boundary set out in the field notes should nevertheless be used because he located a hitherto unknown artificial monument along it but, as the special referee noted, that monument was not referenced in any deed and was of little relevance in assessing the intentions of the parties (see Leitch v Jackson, 243 AD2d 873, 875 [1997]).[FN1] In our view, these circumstances establish an intent to use the boundary set forth by the 1809 survey, consistently relied upon after the 1848 deed and established through monuments, and the property boundary of plaintiff and defendant is therefore that set forth by defendant's surveyor (see Mohonk Preserve, Inc. v Ullrich, 119 AD3d at 1133; Leitch v Jackson, 243 AD2d at 875).
Finally, after reviewing the trial evidence and according due deference to the credibility determinations of the special referee, we are satisfied that "the border was [not] sufficiently known, understood and settled among" plaintiff and defendant so as to support its practical location in a place different from that described by defendant's surveyor (Riggs v Benning, 290 AD2d 716, 718 [2002]; see Kennedy v Nimons, 178 AD3d 1302, 1303 [2019]).
Garry, P.J., Egan Jr., Mulvey and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed, with costs.



Footnotes

Footnote 1: Plaintiff's surveyor also referred to certain maps that drew the boundary in a manner consistent with the field notes, but it was unclear whether the mapmakers did any survey work or instead regurgitated the boundary description given in the field notes.