Zwack v Hunt (2024 NY Slip Op 05926)

Zwack v Hunt

2024 NY Slip Op 05926

Decided on November 27, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 27, 2024

CV-23-0807
[*1]Frank Zwack Jr. et al., Appellants,
v
Judy Hunt et al., Respondents.

Calendar Date:October 18, 2024

Before:Egan Jr., J.P., Clark, Powers and Mackey, JJ.

Hannigan Law Firm PLLC, Delmar (Terence S. Hannigan of counsel), for appellants.
Brian C. Baker, Stephentown, for respondents.

Clark, J.
Appeal from a judgment of the Supreme Court (Stephan G. Schick, J.), entered February 3, 2023 in Rensselaer County, upon a decision of the court in favor of defendants.
Plaintiffs and defendants own adjoining property in the Town of Stephentown, Rensselaer County. In 2018, after plaintiffs' son built, among other things, snowmobiling trails, a dispute arose among the parties about the location of the boundary dividing their properties. Thereafter, plaintiffs brought the instant action seeking to quiet title in the disputed area in their favor, among other relief. Following joinder of issue, the parties proceeded to a nonjury trial where the only disagreement was the location of the eastern boundary of plaintiffs' property, which also served as the western boundary of defendants' property. The parties relied on the testimony of their respective expert surveyors, each of whom examined the parties' chain of title and conducted a physical survey of the properties. Plaintiffs' surveyor, Frederick Haley, testified that the southeast corner of plaintiffs' property was located to the east of a former railroad right-of-way, with the eastern boundary of the property extending to its northern boundary and resulting in defendants' property measuring approximately 2.5 acres. Defendants' surveyor, William Glasser, bounded plaintiffs' property in strict accordance with the metes and bounds called for in plaintiffs' deed, resulting in defendants' property measuring approximately 4.45 acres. Supreme Court found that Glasser's proposed boundary better reflected the shapes described by the parties' deeds, as it created the shapes described therein, but that plaintiffs were entitled to an easement over the snowmobiling trails. The court then entered judgment in accordance therewith. Plaintiffs appeal.
"When reviewing a nonjury verdict, we independently review the probative weight of the evidence, together with the reasonable inferences that may be drawn therefrom, and grant the judgment warranted by the record while according due deference to the trial court's factual findings and credibility determinations" (Miller v Carter, 212 AD3d 918, 922 [3d Dept 2023] [internal quotation marks and citations omitted]; see Mastbeth v Shiel, 218 AD3d 987, 988 [3d Dept 2023]). Where a boundary dispute arises, the parties' intent at the time of the original conveyance controls (see Real Property Law § 240 [3]; Old Timers Rod & Gun Club, Inc. v Wa-A-We Rod & Gun Club, Inc., 184 AD3d 1033, 1033 [3d Dept 2020]). As deed descriptions are to "be made with reference to an actual view of the premises" and should therefore reflect the parties' intent, where a discrepancy exists between a deed description and the physical layout of the land, the rules of deed construction have long been applied to ascertain the intended boundaries of a property (Wendell v People, 8 Wend 183, 190 [1831]; see Case v Dexter, 106 NY 548, 554 [1887]; Sunnyview Farm, LLC v Levy Leverage, LLC, 223 AD3d 955, 956[*2][3d Dept 2024]; Margetin v Jewett, 78 AD3d 1486, 1488 [4th Dept 2010]). Pursuant to the rules of deed construction, primacy is given first to deed calls referring "to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries, then to courses and distances, and lastly to quantity" (Pauquette v Ray, 58 AD2d 950, 952 [3d Dept 1977] [internal quotation marks and citation omitted]; see 1 NY Jur 2d, Adjoining Landowners § 107; Old Timers Rod & Gun Club, Inc. v Wa-A-We Rod & Gun Club, Inc., 184 AD3d at 1033-1034; Shattuck v Laing, 124 AD3d 1016, 1019 [3d Dept 2015]).
At the nonjury trial, the parties agreed as to the location of the northern, western and southern boundaries of plaintiffs' property. The parties' deeds were submitted into evidence to help ascertain the location of plaintiffs' eastern boundary. As relevant here,[FN1] plaintiffs' deed describes the northwest corner of their property as being located on a highway, "thence North 89 East 26 chains; thence South 13 chains and 86 links to a stake and stones or a willow tree on the bank of the creek; thence North 89 West 26 chains to the highway; thence North along the highway 13 chains and 86 links to the place of beginning," amounting to approximately 36 acres and being subject to "the right of way of a certain railway company for its road" which passes through "a certain strip of land through the eastern part of said premises." Defendants' deed describes their property as "[b]eginning and being bounded on the north, west and south by lands of [plaintiffs' predecessor in interest] and on the East by the Railroad, containing about two and one-half acres of land be the same more or less."
Here, plaintiffs' deed includes the only deed call to a natural landmark, as it places the southeast corner of plaintiffs' property at "a willow tree on the bank of the creek." Haley and Glasser agreed that neither the willow tree nor its former location could be ascertained; similarly, the stake and stones called for in the deed at that location could not be found. Glasser also posited that, as creeks meander over time, the modern location of "the bank of the creek" provided no information as to the appropriate location of the southeast corner, so he disregarded that deed call. Glasser then opted to draw plaintiffs' property to comport with the exact metes and bounds called for in plaintiffs' deed, and Supreme Court adopted such methodology and accepted the resulting boundary. Even crediting Glasser's methodology and his assertions about the meandering creek, as Supreme Court did here, Glasser also admitted that the deed call to the former railroad right-of-way reflects an artificial monument, and that he disregarded such deed call. In adopting Glasser's methodology and accepting the resulting boundary, the court erred as a matter of law, as it focused on the courses and distances in the deed, in contravention of the long-established hierarchy giving preference to deed calls to artificial [*3]monuments (see e.g. Old Timers Rod & Gun Club, Inc. v Wa-A-We Rod & Gun Club, Inc., 184 AD3d at 1033-1034; Pauquette v Ray, 58 AD2d at 951-952). As Supreme Court failed to consider the railroad right-of-way, we exercise our broad powers to review the record on appeal and make the appropriate determinations.
Based upon our independent review of the record, and a proper application of the rules of deed construction, we find that plaintiffs are entitled to judgment in their favor. Haley acknowledged that creeks are prone to shift over time, but he explained that this creek was relatively stable due to its location at the bottom of a valley. This contention is further supported by a 1917 map prepared by the railroad company that documents its rights-of-way over the surrounding properties, which shows the creek — and the southeast corner of plaintiffs' property — to the east of the railroad. Plaintiffs' deed also called for the railroad right-of-way to pass through "a certain strip of land through the eastern part of said premises," further evincing that the southeast corner of plaintiffs' property must be located to the east of the railroad right-of-way. The former railroad right-of-way also features in defendants' deed, which describes the eastern boundary of their property as the location of the former railroad, and a different parcel granted through the same deed is described as the exact location of the former railroad right-of-way. Indeed, although the railroad tracks were no longer present, its former location was readily ascertainable by both surveyors, and it is reflected on both of their survey maps. As "natural landmarks and artificial monuments take precedence over mere metes and bounds descriptions," we find that Haley properly honored the deed calls to the bank of the creek and to the former railroad right-of-way, giving them primacy above the courses and distances called for in the deed (Zelnik Realty v York, 170 AD2d 926, 928 [3d Dept 1991]; accord Brown v Ames, 290 AD2d 693, 694 [3d Dept 2002]; see Case v Dexter, 106 NY at 554; Pauquette v Ray, 58 AD2d at 951-952). Adopting Haley's boundary line also comports with the language of defendants' deed, as it respects the calls to the neighboring boundaries and measures approximately 2.5 acres. As Haley's boundary line reflects a proper application of the rules of deed construction, we reverse the judgment on appeal. We find that the Haley survey map, dated July 30, 2018 and admitted at trial as plaintiffs' exhibit 7, reflects the proper boundary line separating plaintiffs' property from defendants' property, and we enter judgment accordingly (see Pauquette v Ray, 58 AD2d at 951-952).
In light of this determination, the parties' remaining contentions have either been rendered academic or lack merit.
Egan Jr., J.P., Powers and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the law and the facts, with costs, and judgment granted in plaintiffs' favor, with the boundaries [*4]of plaintiffs' lot to be drawn in accordance with the Haley survey, dated July 30, 2018 and submitted at trial as plaintiffs' exhibit 7.

Footnotes

Footnote 1: The parties' deeds each reflect ownership over various other parcels of land.