■ ABRAHAM SCHWEITZER, Appellant, v HUBERTUS F. HEPPNER et al., Respondents, et al., Defendants. [622 NYS2d 142] —Cardona, P. J. Appeal from a judgment of the Supreme Court (Bradley, J.), entered January 7, 1994 in Ulster County,

upon a decision of the court in favor of defendants Hubertus F. Heppner and Maria Heppner.

In 1949, Herbert Shultis and Nellie Shultis, the owners of a large parcel of rural land, conveyed a small lot to plaintiff. Herbert Shultis, who was not a surveyor, laid out and measured the lot. Plaintiff's rear and easterly boundary line is described as follows: "running thence in a northerly direction 144 feet more or less, *in a straight line* to a cherry tree" (emphasis supplied).

In 1962, Herbert Shultis, with the assistance of Herbert Shultis, Jr. (hereinafter Shultis), whose name had been added to the deed, laid out and measured a lot to the rear and east of plaintiff's lot. This new lot, now owned by defendants Hubertus F. Heppner and Maria Heppner (hereinafter collectively referred to as defendants), contains the following description: "and running thence in a westerly direction and at right angles to said New Town Road *100 feet to the easterly bounds of [plaintiff]*; thence northerly *along the easterly bounds of [plaintiff]* 103 feet more or less to a stake driven in the ground" (emphasis supplied).

During the 1980s a dispute arose over the location of the parties' rear lines with plaintiff contending that he had adversely possessed a strip of land beyond his rear boundary. Plaintiff commenced this action in 1987. Thereafter in 1989, deciding that ambiguities in defendants' deed permitted the conclusion that the parcels were not contiguous and that certain parol evidence supported a contention that defendants' rear or westerly line was not straight but concave, plaintiff procured a quitclaim deed for a small parcel allegedly being the land between the two parcels. The description of the new parcel included a portion running underneath defendants' home. Plaintiff amended his complaint to claim legal title to the land described in the 1989 quitclaim deed.

At the subsequent nonjury trial the parties produced survey maps and their respective surveyors, Paul Tillman for plaintiff, Richard Brooks and Thomas Conrad for defendants, testified as to their findings. All three surveyors found discrepancies between their field measurements and the monumentation and distance calls described in the parties' deeds. In particular, Conrad and Tillman, testified that the recited distance call of "100 feet to the easterly bounds of [plaintiff]" in the rear boundary description of defendants' deed fell short of plaintiff's easterly boundary, creating in their opinion a narrow strip of land or "gore" between the two main parcels.

Because the gore was not clearly in either of plaintiff's or defendants' deeds, Conrad, who plaintiff had initially hired to prepare a survey, refused to show the gore as plaintiff's. Because of this refusal plaintiff terminated his services and hired Tillman. Despite the discrepancy in the distance measurement of defendants' rear boundary and the existence of a gore, both of defendants' surveyors testified that the deed call "to" the lands of plaintiff took precedence over the distances recited in defendants' deed and, therefore, both surveys showed defendants' disputed western property line as a straight line.

Tillman testified that the first survey map he prepared depicted defendants' westerly property line as a straight line. He also admitted that the call descriptions in plaintiff's and defendants' deeds indicated that the properties were adjoining along defendants' western boundary in a straight line. Tillman, however, changed the map at plaintiff's request to show the western boundary as a curved line after reading the deposition testimony of Shultis that this was the grantors' intention, and based on the 1989 deed from Shultis' father and his wife to plaintiff.

After a trial, Supreme Court found that plaintiff's original parcel and defendants' parcel were adjacent along a common straight line boundary. The court also found that adverse possession had not been proven. Plaintiff appeals from the judgment entered thereon.[1]

Plaintiff contends that Supreme Court improperly applied the rules of deed construction by discounting the depositions of Shultis, one of the grantors, and Philip Amisano, one of the original grantees, as to their intent in 1962 when defendants' lot was created. In particular, plaintiff contends that because Supreme Court's decision does not specifically make reference to the transcript of Amisano's deposition, it failed to consider the evidence. On both scores we disagree and affirm.

Initially, we note that CPLR 4213, which sets forth the formal requirements of a decision by a court after trial, has no requirement that the particulars of trial evidence be summarized or that discounted proof be itemized. We find nothing here to suggest that Supreme Court did not consider the entire record before rendering its decision. The decision specifically states that the court reviewed the documents introduced into evidence.

---

1. On this appeal, plaintiff does not challenge the dismissal of his adverse possession claim.

We now turn to plaintiff's contention that Supreme Court improperly applied the rules of deed construction. Real Property Law § 240 (3) provides that: "Every instrument creating, transferring * * * real property must be construed according to the intent of the parties, so far as such intent can be gathered from the whole instrument, and is consistent with the rules of law." Where the language used in a deed is susceptible of more than one interpretation, the courts will look beyond the written instrument to the surrounding circumstances (*Loche Sheldrake Assocs. v Evans*, 306 NY 297, 304; *Horton v Niagara, Lockport & Ontario Power Co.*, 231 App Div 386, 390). Parol evidence can be admissible to explain latent ambiguities or to apply a general deed description to a particular land to which it was intended to refer. It may not be used to vary a boundary description or call set forth in a deed (*see, Cordua v Guggenheim*, 274 NY 51, 57, 58; 1 NY Jur 2d, Adjoining Landowners, § 155, at 649; 12 Am Jur 2d, Boundaries, § 104, at 638).

Here, however, the parol evidence offered by plaintiff is neither convincing nor clear, and defendants, as grantees, are entitled to a favorable construction which does no violence to the language used in the deed (*see, Horton v Niagara, Lockport & Ontario Power Co., supra*, at 389, 393). A review of Shultis' and Amisano's depositions reveals vagueness and ambiguities as well as contradictions in relation to each other, sometimes supporting one party or the other. Shultis stated that he followed his father's instructions, held the beginning end of the tape measure and moved to where his father instructed him. He further stated that they placed only one stake (at the northwest corner), that his measurement on the southern boundary started at the road's edge and ended beyond the crest of a steep embankment, that while measuring he tried to keep the measuring tape in a straight line, but trees and bushes prevented it, and that while it was his only time on that section of land and he did not know the bounds of plaintiff's lot, he thought his father was intending to retain a small strip of land between the two lots.

On the other hand, Amisano stated that when he walked the proposed lot with Shultis' father, there existed numerous flagged stakes and paint-marked trees, that the southern boundary began some feet in from the road's edge to accommodate a proposed drainage system and ended on the top of the embankment, that the rear boundary was scalloped, and that immediately over the bank the land was identified as belonging to his neighbor without mention of a gore. Memo-

ries of the 1962 visits by both Shultis and Amisano were admittedly limited and did not resolve the deed ambiguity. It is apparent, however, that it was Shultis' father who was familiar with the property and who ultimately determined its location and description, and his intentions as to defendants' rear boundary line are reflected clearly only in the deed.

Because the deposition transcripts failed to reconcile the inconsistencies in the deed calls, Supreme Court properly resorted to the rules of construction. As this Court stated in *Pauquette v Ray* (58 AD2d 950), " 'other things being equal' " the rules of construction apply *(supra,* at 952, quoting 6 NY Jur, Boundaries, § 53). In applying those rules, resort to adjacent boundaries, here twice clearly and specifically referred to in defendants' deed description, takes precedence over distances[2] *(see, Zelnik Realty v York,* 170 AD2d 926, 927-928; *Thomas v Brown,* 145 AD2d 849, 850-851; *Pauquette v Ray, supra,* at 952; *see also, County of Erie v Bourne,* 59 AD2d 1008, *appeal dismissed* 43 NY2d 947; *Lewis v Clark,* 133 NYS2d 880, *appeal dismissed* 285 App Div 1006; 1 NY Jur 2d, Adjoining Landowners, §§ 66-70, 115, 117, at 558-561, 611, 612-613). Similarly, although the surveys relied upon by the experts also presented some discrepancies and uncertainties, they merely raised issues of fact. Supreme Court's assessment of the experts' credibility and the weight to be accorded to the testimony is generally entitled to deference by the reviewing court *(see, Levy v Braley,* 176 AD2d 1030, 1033). We conclude that Supreme Court's determination is amply supported by the weight of the credible evidence.

Finally, we reject plaintiff's contention that he acquired title to the alleged gore by virtue of the 1989 deed. Tillman admitted that senior rights should be given to the parcel first deeded out of the common grantor *(see,* 43A NY Jur 2d, Deeds, § 239). Here, as Supreme Court correctly noted, the deeds both to the grantees prior to defendants and to defendants were senior in time to the 1989 deed and therefore entitled to priority.

Mercure, White, Casey and Peters, JJ., concur. Ordered that the judgment is affirmed, with costs.

---

2. The record reveals that the measurements made by the Shultises were often inaccurate.