■ JOHN R. SHULTS et al., Appellants, v JOHN GEARY, Respondent, et al., Defendant. [660 NYS2d 497] —Spain, J. Appeal from a judgment of the Supreme Court (Torraca, J.), entered May 16, 1996 in Ulster County, upon a decision of the court in favor of defendant John Geary.

In 1938 a large parcel of land in the City of Kingston, Ulster County, was deeded to William Kingman and Alva Staples. Ten years later, Alva Staples deeded all of his interest in the property to Kingman, with the exception of six lots, one of which is the parcel in dispute in this case. Plaintiff Elizabeth K. Shults is Kingman's daughter and, through her father's will, her mother's death and a recent deed from her sister, plaintiffs assert that she acquired approximately three eighths of her father's one-half interest in the disputed parcel. Alva

Staples survived Kingman and devised half of his interest in his remaining real property to his wife, Cora Staples; he then devised 55% of his remaining one-quarter interest (or approximately one-eighth interest) to his son, Terry Staples, and 45% the balance of his remaining one-quarter interest, in trust for his daughter, Mary Staples.

Plaintiffs purchased and have continuously resided on property to the north of the disputed parcel since 1947. Defendant John Geary (hereinafter defendant) purchased the property to the south of the disputed parcel from Terry Staples in 1984. After a disagreement with plaintiffs, defendant obtained a quitclaim deed from Terry Staples which purports to convey all of Terry Staples' interest in the entire disputed parcel. Plaintiffs maintained that they had acquired the disputed parcel by adverse possession as well as by devise and conveyance; defendant maintained that he obtained the disputed parcel by conveyance.

In 1985 plaintiffs and defendant, each represented by counsel, entered into a written agreement which was drafted by plaintiffs' counsel wherein defendant expressly recognized plaintiffs' rights of adverse possession in the northerly one-half portion of the disputed parcel and purported to quitclaim said northerly one half to plaintiffs in exchange for a right-of-way over said northern portion and the sum of $2,000 paid by plaintiffs to defendant. The agreement also granted plaintiffs a right-of-way over the southerly half of the disputed parcel. The attorney who represented defendant at the time admitted that the final sentence, "[t]his agreement establishes the boundary line between the above referenced parties", was added to the agreement at his request and possibly by his office, but only after discussing the addition with plaintiffs' counsel; according to defendant the addition was in the agreement when he signed it. However, the attorney who represented plaintiffs at the time of the agreement has no specific recollection of the addition. Notably, neither of the attorneys representing the parties in 1985 can recall whether the additional sentence was affixed to the instrument when it was signed by plaintiffs. Plaintiff John R. Shults admitted at the trial that he did not read the instrument before he signed it; his wife, Elizabeth Shults, did not testify.

In 1994 plaintiffs commenced this action seeking a declaratory judgment determining that they are the sole owners of the entire disputed parcel and declaring the 1985 agreement null and void, or in the alternative, reforming the instrument by deleting the last sentence. After a nonjury trial Supreme Court

upheld the agreement finding no fraud, misrepresentation or mutual mistake of fact, and therefore no grounds for reformation. The court also decided that the question of adverse possession was "therefore moot" and ordered judgment for defendant. Plaintiffs appeal.

We affirm. Initially, we find no basis for reformation or rescission of the 1985 agreement. Equity will reform an instrument which, by mistake, does not reflect the agreement reached between the parties (*see, Lent v Cea*, 209 AD2d 820, *lv denied* 86 NY2d 703; *see also, Harris v Uhlendorf*, 24 NY2d 463, 467); however, the burden is on the party seeking relief to establish cause for reformation of the instrument by clear and convincing evidence (*see, Nash v Kornblum*, 12 NY2d 42, 46; *Lent v Cea, supra*, at 820). "The proponent of reformation must 'show in no uncertain terms, not only that mistake * * * exists, but exactly what was really agreed upon between the parties'" (*Chimart Assocs. v Paul*, 66 NY2d 570, 574, quoting *Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211, 219). There is a heavy presumption that a deliberately prepared and signed instrument manifests the true intention of the parties (*see, Weed v Weed*, 222 AD2d 800, 801).

In order to merit reformation based on unilateral mistake, the movant must show that the other party deliberately misled the movant and that the subsequent writing did not express the intended agreement (*see, Loyalty Life Ins. Co. v Fredenberg*, 214 AD2d 297, 299-300; *see also, Chimart Assocs. v Paul, supra*, at 573). Likewise, a conveyance of property based on a mutual mistake is subject to rescission (*see, Larsen v Potter*, 174 AD2d 801); however, the mutual mistake must exist at the time the agreement is signed and it must be substantial (*see, D'Agostino v Harding*, 217 AD2d 835, 837; *Melia v Riina*, 204 AD2d 955, 958, *lv dismissed* 85 NY2d 857). As in reformation, a party seeking rescission by mutual mistake must overcome a heavy presumption and prove by clear and convincing evidence that there was a mutual mistake (*see, Clifton Country Rd. Assocs. v Vinciguerra*, 195 AD2d 895, 897, *lv denied* 82 NY2d 664; *see also, Vermilyea v Vermilyea*, 224 AD2d 759).

Here, even without the controversial sentence which establishes a boundary line between the northerly half and southerly half of the disputed parcel, plaintiffs' intentions are evident from the language in the instrument which precedes that sentence, as well as from the testimony of their attorney and John Shults, who testified that he and his wife intended to establish their rights to the northern half of the disputed portion and to grant defendant a right-of-way over that northerly por-

tion which they claimed to own by adverse possession, while obtaining from defendant a right-of-way over the southerly half of the disputed parcel. In our view, the instrument which plaintiffs signed clearly acknowledges defendant's rights to the southerly half where it states that defendant "grant[s] [to plaintiffs] a right-of-way over that portion of the roadway as it now exists which is located on the southerly one-half part of the * * * parcel". Moreover, plaintiffs paid defendant $2,000. The record amply supports Supreme Court's conclusion that plaintiffs, who were represented by an attorney at the time the 1985 agreement was negotiated, executed and recorded, failed to overcome the heavy presumption favoring the instrument as written, and failed to establish by clear and convincing evidence either a mutual mistake of the parties or substantial error warranting reformation or revision.

Next, although plaintiffs may have established adverse possession rights to the disputed parcel, in the agreement they gave up any rights they may have had to the southerly half of the parcel. It is settled law that recognition of a boundary line is fatal to a claim of adverse possession (*see, Guariglia v Blima Homes*, 89 NY2d 851; *Van Gorder v Masterplanned, Inc.*, 78 NY2d 1106). Furthermore, plaintiffs openly acknowledge in more than one place within the instrument that defendant has a superior claim to the southerly half of the parcel, negating the element of hostility in any claim of adverse possession to that portion (*see, Guariglia v Blima Homes, supra*; *Van Gorder v Masterplanned, Inc., supra*; *Reynolds v Arnold*, 221 AD2d 733, 734, *appeal dismissed* 87 NY2d 953; *Esposito v Stackler*, 160 AD2d 1154, 1155). Accordingly, plaintiffs' claim of ownership to the southerly portion of the parcel fails.

Mikoll, J. P., Crew III, Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed, with costs.