*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  July 9, 2015                    519815
_____

MOHONK PRESERVE, INC.,
                    Appellant,

           v                              MEMORANDUM AND ORDER

KAREN PARDINI et al.,
                    Respondents.
_____

Calendar Date:  April 21, 2015

Before:  Lahtinen, J.P., McCarthy, Garry and Rose, JJ.

                    _____

          Rupp Baase Pfalzgraf Cunningham, LLC, Buffalo (R. Anthony
Rupp III of counsel), for appellant.

          Graff Law, LLC, Kingston (Sharon A. Graff of counsel), for
respondents.

                    _____

Lahtinen, J.P.

          Appeal from an order and judgment of the Supreme Court
(Cahill, J.), entered December 19, 2013 in Ulster County, which,
in an action pursuant to RPAPL article 15, among other things,
declared defendants to be the owners of certain real property.

          The parties to this action both assert ownership of
approximately 73 acres of undeveloped real property in the Town
of Rochester, Ulster County.  Plaintiff, a not-for-profit land
conservation organization that owns adjoining land to the west,
purported to purchase the property in 1994 and traces its title
to an 1881 tax deed.  Defendants, who own adjoining property to
the south and east, claim to have bought the property in 1987,
they trace title to an 1855 conveyance, and also allege that they
established adverse possession of the property.  Plaintiff

commenced this action to quiet title in 2004 after observing logging activity on the disputed land. Defendants counterclaimed alleging, among other things, that they had superior title. A lengthy nonjury trial was eventually conducted where both parties presented experts and extensive evidence supporting their respective positions. In addition, at the parties' request, Supreme Court viewed the disputed property. Supreme Court rendered a decision in defendants' favor, finding, among other things, that they had shown superior record title. Plaintiff appeals.

"[I]n reviewing a verdict after a nonjury trial, this Court may independently review the evidence and, while deferring to the trial court's credibility assessments, grant the judgment warranted by the evidence" (Shattuck v Laing, 124 AD3d 1016, 1017 [2015]; see Henshaw v Younes, 101 AD3d 1557, 1560 [2012]). "In the context of a boundary dispute, deeds must be construed in accordance with the parties' intent and extrinsic evidence is admissible to clarify any ambiguities" (Mohonk Preserve, Inc. v Ullrich, 119 AD3d 1130, 1131 [2014] [citation omitted]; see Schweitzer v Heppner, 212 AD2d 835, 838 [1995]). The parties agree that far less than precise records and deeds were used for portions of Ulster County in the nineteenth century – during a time key to resolution of ownership of the property – and, thus, the use of extrinsic evidence was appropriate in this case.

The property in dispute is the southern 73 acres of a 101-acre parcel conveyed to John Depuy in 1799 and known as "Lot 1" of the "Nineteen Partners' Tract." When Depuy died in the 1820s, he bequeathed a portion of the northern section of Lot 1 to his daughter and the remaining southern section of approximately 92 acres to the six children of Moses Depuy. What happened thereafter to the 92 acres is not entirely clear from the real property and other relevant records.

Plaintiff relies on an 1881 tax deed (resulting from a 1879 tax sale) to Martin Coddington that referred to a parcel known as the "Kings Lane Lot" and purported to transfer 92 acres. This description continued in subsequent deeds to plaintiff's grantor, who transferred the subject southern 73 acres of the 92-acre parcel to plaintiff. Defendants presented proof – ultimately

credited by Supreme Court — that the Kings Lane Lot was, in fact, a 26-acre lot to the north of the relevant 73-acre parcel and, accordingly, the pertinent property was never in plaintiff's chain of title.

Although defendants presented a detailed effort to deconstruct plaintiff's claim to the property, the proof supporting their claim to the property was tenuous at best. Defendants' evidence attempting to erode plaintiff's claim to title pointed to the conclusion that the proper plotting of the Kings Lane Lot — which was originally described only by referencing adjoining property owners — placed it immediately north of the disputed 73-acre parcel, and that scrivener's errors on the tax assessment rolls between 1876 to 1881 changed the acreage of the Kings Lane Lot from 26 to 96 and then to 92. Defendants' experts asserted that the important 1881 Coddington tax deed (prepared based on a 1879 tax foreclosure sale) actually involved property that Coddington had purchased in 1874 — but did not record the deed until 1879 — and was part of property that had been known as the Curran farm. The Curran farm was purportedly on the north side of a prominent ridge that ran along part of that farm's southern border and, thus, entirely north of the disputed 73-acre part of Lot 1 that was located generally south of the area of the ridge. The acreage of the Kings Lane Lot first appeared in the 1876 tax assessment. Supreme Court accepted defendants' assertion that the number of acres recited was, in fact, 26 and that, thereafter, the "2" was mistaken for a "9" resulting in 96 acres being listed in the 1877 tax assessment. This purportedly became the source for the incorrect reference in the 1881 tax sale deed of the acreage of the King's Lane Lot as 92 rather than 26.

There are several significant problems with defendants' analysis. First and importantly, for over 100 years, their chain of title makes no reference and contains no description of the property they now claim, as they rely merely upon the general "being clauses" in the deeds. Second and equally important, on the other hand, plaintiff's chain has included for over 100 years an actual description of the 92 acres from which plaintiff's 73-acre parcel was purchased. Third, upon our review of the purported "2" in "26" acres in the 1876 tax assessment, we find that the number was, in fact, a "9" for "96." This undercuts a

key link in defendants' argument that the relevant property was never properly in plaintiff's chain of title. Finally, according to the topographical map in the record, as well as testimony, the "prominent ridge" that played a significant role in defendants' analysis and apparently was a factor in an earlier case,[1] does not remain prominent into the pertinent area. Although the ridge is clear on an adjoining parcel, the land smooths considerably on the lot in dispute. For all the above reasons and after review of the extensive record, we reverse.

We also reject defendants' argument that they obtained title to the disputed property through adverse possession. Defendants offered only vague, non-specific testimony regarding their activities on the property and such evidence was insufficient as a matter of law to establish their continuous possession and occupation of the disputed property (see RPAPL former 511, 512; Robbins v Schiff, 106 AD3d 1215, 1217 [2013]). The remaining arguments have been considered and are unavailing.

McCarthy, Garry and Rose, JJ., concur.

---

[1] The ridge was a physical characteristic ostensibly noted in resolving litigation involving other lots from the Nineteen Partners' Tract (see Shawangunk Conservancy v Fink, 261 AD2d 692, 693 [1999]).

ORDERED that the order and judgment is reversed, on the law and the facts, with costs, and plaintiff is declared to be the owner of the subject real property.

ENTER:

Robert D. Mayberger
Clerk of the Court