Torpy's Pond & Outdoor Club, Inc. v Dusell (2021 NY Slip Op 05904)





Torpy's Pond & Outdoor Club, Inc. v Dusell


2021 NY Slip Op 05904


Decided on October 28, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 28, 2021

531528
[*1]Torpy's Pond and Outdoor Club, Inc., Appellant,
v
D. Lee Dusell, as Trustee of the D. Lee Dusell Living Trust, Respondent.

Calendar Date:September 9, 2021

Before:Lynch, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.

Westfall Law, PLLC, Syracuse (Ryan L. McCarthy of counsel), for appellant.
David B. Vickers, Fayetteville, for respondent.



Pritzker, J.
Appeal from an order of the Supreme Court (Cerio Jr., J.), entered May 11, 2020 in Madison County, which, among other things, denied plaintiff's motion for summary judgment seeking quiet title.
This matter concerns the ownership of an approximately 8.46-acre, semicircular area of land that is almost completely submerged by the northwesternmost portion of Torpy's Pond in the Town of Georgetown, Madison County (hereinafter the disputed area). Plaintiff is the exclusive owner of the property adjacent to the southern border of the disputed area, which includes most of Torpy's Pond, and defendant is the exclusive owner of the property immediately to the north of same. After a 2013 land survey commissioned by defendant (hereinafter the 2013 survey) raised questions as to ownership of the disputed area, plaintiff, in October 2018, commenced this RPAPL article 15 proceeding to quiet title to the disputed area. Defendant answered and, among other things, asserted a counterclaim seeking quiet title. Plaintiff replied, denying defendant's counterclaim and raising various affirmative defenses, including that any claim of ownership by defendant to the disputed area was barred by the doctrine of laches.
Subsequently, plaintiff moved for summary judgment arguing, among other things, that although certain language in the deeds in the chain of title was ambiguous, a reasonable interpretation of same, as supported by, among other things, the deed history, purportedly showed that the disputed area belonged to plaintiff in fee simple. Alternatively, plaintiff maintained that defendant's claim was barred by laches. In turn, defendant cross-moved for, among other things, summary judgment on its counterclaim, presenting a divergent title history. Defendant further refuted that his claim was barred by laches, arguing, among other things, that he did not have notice of the property dispute until the 2013 survey. As relevant here, Supreme Court denied plaintiff's motion for summary judgment finding that plaintiff failed to establish prima facie entitlement to the disputed area. Further, the court granted defendant's cross motion for summary judgment on his counterclaim, holding that defendant prima facie established ownership in fee simple of the disputed area. Finally, the court determined that plaintiff's laches claim was without merit because defendant had no knowledge that there was an issue with his title until recently. Plaintiff appeals.
We turn first to plaintiff's contention that Supreme Court erred in granting defendant's cross motion for summary judgment. "It is well settled that a deed must be construed according to the intent of the parties and, further, that a court is to give effect and meaning, to the degree possible, to each and every phrase or part of the deed" (Carter v Heitzman, 198 AD2d 649, 649 [1993], lv denied 83 NY2d 751 [1994]; see Real Property Law § 240 [3]; Old Timers Rod & Gun Club, Inc. v Wa-A-We Rod & Gun Club, Inc., 184 AD3d [*2]1033, 1033 [2020]). However, "[w]here the language used in a deed is susceptible of more than one interpretation, the courts will look beyond the written instrument to the surrounding circumstances" (Schweitzer v Heppner, 212 AD2d 835, 838 [1995]; see Muldoon v Deline, 135 NY 150, 153 [1892]). As relevant here, "[i]n the absence of an explicit reservation, a grant of land on the shore of a pond . . . will be held to include the adjoining underwater land, except in unusual cases where the nature of the grant itself shows a contrary intention" (Knapp v Hughes, 19 NY3d 672, 677 [2012]; see Henry v Malen, 263 AD2d 698, 701 [1999]; Hammel v Camp Ranger, Inc., 275 App Div 23, 25 [1949], affd 300 NY 602 [1949]).
In opposition to plaintiff's motion and in support of his cross motion for summary judgment, defendant submitted, among other things, the deeds in his chain of title and the 2013 survey with an accompanying report and expert opinion of Duane C. Frymire, a land boundary consultant, who conducted said survey. The chain of title and Frymire's report establish that the disputed area lies within Lot 10. After an earlier owner lost Lot 10 due to debts, by way of deed in May 1850,[FN1] the southern half of the lot was conveyed to Nelson Richardson. The northern half of Lot 10, including the disputed area, was conveyed, by way of deed in May 1850,[FN2] to Julius Sims. Then, by way of a May 1851 deed, a portion of the northern half of the lot, including the disputed area, was conveyed from Julius Sims and Mary Sims to David Sloane. This deed sets out a detailed metes and bounds description and includes the following language: "excepting and reserving therefrom all the land that the owner of a sawmill (now occupied by Admiral Bump) has a right to flow or all that has been heretofore flowed for the use of said saw mill leaving the land intended to be conveyed to contain [40] acres and seven rods of land, more or less" (emphasis added). Defendant's chain of title further reveals that the property described in the 1851 deed was thereafter properly conveyed by way of warranty deeds until 1970, when defendant, personally, and Mary DuSell, his wife, acquired title to the property. In June 2016, defendant conveyed title to his property to himself and Brian C. DuSell, as trustees of the D. Lee DuSell Living Trust.
As relevant here, the 2013 survey and Frymire's report conclude that the disputed area "was never conveyed out of [defendant's] chain, and never conveyed into [plaintiff's] chain." The 2013 survey and Frymire's report note that "[s]hortly after the [U.S.] Revolution there was [a] surge in westward expansion in New York. Lands were deforested, surveyed into large tracts, and [split] up for farming purposes. Building of dams and mills followed quickly. The mills were sometimes leases and sometimes small deeded parcels, in either case with rights to water in order to operate. They did not acquire the lands under the waters as the farms were operating [*3]and needed land, water, and access to said water." Frymire concludes that the "excepting and reserving" language in the May 1851 deed is a mere reference to "a flowage easement" in favor of a third party. Frymire's report traced the source of title for the portion of plaintiff's parcel that was originally part of the eastern side of the northern half of Lot 10, adjacent to the disputed area, to a March 1853 deed from Julius Sims to Nelson Richardson. As Frymire indicates, flowage rights are not mentioned in this deed because Richardson already owned the southern half of Lot 10. Finally, defendant submitted several deeds within plaintiff's chain of title to support that the disputed area "was never part of original deeds in [plaintiff]'s chain of title."
This proof established defendant's prima facie entitlement to quiet title to the disputed area (see X & Y Dev. Group, LLC v Epic Tower, LLC, 196 AD3d 732, 733 [2021]; Bergstrom v McChesney, 92 AD3d 1125, 1126 [2012]). Primarily, defendant demonstrated ownership to the disputed area by submitting proof that he holds title via the May 1851 deed which conveyed the northern half of Lot 10 (see X & Y Dev. Group, LLC v Epic Tower, LLC, 196 AD3d at 733),[FN3] which included the disputed area, but contained a reference to a flowage easement regarding the disputed area as it relates to "a right to flow . . . for the use of said saw mill." "The burden thus shifted to [plaintiff] to produce competent evidence in admissible form establishing the existence of material issues of fact" (Bergstrom v McChesney, 92 AD3d at 1126 [citations omitted]).
In opposition to defendant's cross motion for summary judgment, and in support of its motion for the same relief, plaintiff relies upon language contained in an 1876 deed in the chain of title for its parcel. This language, which directly follows the metes and bounds description, states, "and also all land that has been usually flowed by water on said half lot by reason of said [m]ill and all that is not on said lot." Plaintiff contends that, rather than an easement, this language conveys the disputed area to plaintiff's predecessor in interest. However, contrary to plaintiff's contention, this reference to "all land that has been usually flowed by water" references a privilege or easement over the disputed area. To that end, the 1876 deed conveyed the land on the side of the pond for flowage purposes only, not that of the pond itself, since the disputed area "is the land bordering upon the waters of the pond which may be overflowed by the raising of the [mill] dam, and not the lands under the waters of the pond already overflowed" (Matter of Brookfield [Sarles], 176 NY 138, 145 [1903]).
The structure of the 1876 deed itself provides further support for this conclusion, considering that the contested language therein is included in a sentence that is separate from the description of the land conveyed and is immediately succeeded by a sentence describing a "privilege [*4]of laying logs and boards" for the use of the mill. In short, "[a] grant in such language conveys no title to the soil, but simply the use of the water" (Nostrand v Durland, 21 Barb 478, 481 [1856]). Finally, Supreme Court correctly held that plaintiff's reference to later deeds and surveys — whether to show discrepancies in language or acreage — is irrelevant to the foregoing determination, considering "[r]esort cannot be had to the later deed in order to create an ambiguity in the earlier, and make it the basis of construction through the aid of extrinsic facts" (New York Life Ins. & Trust Co. v Hoyt, 161 NY 1, 9 [1899]; see Margetin v Jewett, 78 AD3d 1486, 1488 [2010]). Accordingly, as plaintiff failed to rebut defendant's prima facie case, Supreme Court properly granted defendant's cross motion for summary judgment seeking quiet title to the disputed area.[FN4] Given this determination, we need not reach plaintiff's arguments relative to its motion for summary judgment.
Contrary to plaintiff's remaining contention, Supreme Court properly determined that defendant's claim of ownership of the disputed area is not barred by laches, as plaintiff failed to establish all of the required elements (see Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 816 [2003], cert denied 540 US 1017 [2003]; Matter of 101CO, LLC v New York State Dept. of Envtl. Conservation, 169 AD3d 1307, 1310 [2019], lv dismissed 34 NY3d 1010 [2019]), and "[t]he mere lapse of time, without a showing of prejudice, will not sustain a defense of laches" (Saratoga County Chamber of Commerce v Pataki, 100 NY2d at 816; see Eastern Shopping Ctrs. v Trenholm Motels, 33 AD2d 930, 932 [1970]).
Lynch, J.P., Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: This deed was not recorded until September 1854.

Footnote 2: This deed was not recorded until September 1853.

Footnote 3: Although plaintiff challenges Supreme Court's stated boundaries as per the 1851 deed, such challenge is improper for this Court's review since plaintiff "failed to properly challenge the submission at the trial level in connection with [defendant's] motion" (Parillo v Salvador, 276 AD2d 1000, 1002 [2000], lv denied 96 NY2d 702 [2001]).

Footnote 4: Among other reasons, as defendant did not cross-appeal from Supreme Court's order, we cannot reach defendant's assertion that the subject easement has been extinguished (see generally Hobler v Hussain, 111 AD3d 1006, 1009 n 4 [2013]).