Sunnyview Farm, LLC v Levy Leverage, LLC (2024 NY Slip Op 00008)

Sunnyview Farm, LLC v Levy Leverage, LLC

2024 NY Slip Op 00008

Decided on January 4, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 4, 2024

535248 CV-22-1934
[*1]Sunnyview Farm, LLC, et al., Appellants,
v
Levy Leverage, LLC, et al., Respondents.

Calendar Date:November 14, 2023

Before:Egan Jr., J.P., Pritzker, Fisher, McShan and Powers, JJ.

The Law Office of Laura E. Ayers, Esq., Delanson (Laura E. Ayers of counsel), for appellants.
Freeman Howard, PC, Hudson (Paul M. Freeman of counsel), for Levy Leverage, LLC and another, respondents.
Couch White, LLP, Albany (Donald J. Hillmann of counsel), for Robert Greenberg, respondent.

McShan, J.
Appeals (1) from an order of the Supreme Court (Laura M. Jordan, J.), entered April 8, 2022 in Columbia County, which, among other things, partially granted defendants' motions for summary judgment, and (2) from an order of said court, entered October 3, 2022 in Columbia County, which, among other things, upon reargument, granted defendants' motions for summary judgment dismissing the complaint.
Beginning in the 1960s, Morris Levy amassed over 1,000 acres of property consisting of various parcels in Columbia County, which became generally known as Sunnyview Farms. As relevant here, one of those parcels, later identified as the Schnackenberg property, was acquired by Morris Levy in 1974 through his company Adam R. Levy & Father Enterprises, Inc. Following Morris Levy's death in 1990, Sunnyview Farms was passed to his three sons — plaintiff Simon B. Levy, defendant Daniel Z. Levy and nonparty Adam Levy. In the early 2000s, Simon and Daniel Levy purchased Adam Levy's interest in Sunnyview Farms. As part of that buyout, the Schnackenberg property was transferred to Simon and Daniel Levy, who held the property together, with Simon Levy maintaining his share through Adam R. Levy & Father Enterprises, Inc. as the sole shareholder, and Daniel Levy maintaining his share through defendant Levy Leverage, LLC (hereinafter collectively referred to with Daniel Levy as the Levy defendants) as the sole member. Thereafter, the relationship between Simon and Daniel Levy deteriorated and, after extensive litigation concerning Morris Levy's estate, the two brothers entered into a settlement agreement dividing ownership of various assets, including Sunnyview Farms. The agreement was subsequently entered by Surrogate's Court (Nichols, S.) as a stipulated order in June 2014. Under the terms of the settlement relevant to this dispute, the Schnackenberg property was deeded to Daniel Levy via Levy Leverage, LLC, with Simon Levy receiving the remainder of Sunnyview Farms, which was held by plaintiff Sunnyview Farm, LLC, of which Simon Levy was the sole member.
In early 2015, defendant Robert Greenberg, an owner of land adjacent to the Schnackenberg property, reached out to Daniel Levy to propose a purchase of certain property identified on a map that Greenberg had prepared, which included the Schnackenberg property as well as some property that was purportedly owned by Simon Levy. Simon Levy was uninterested in transferring any of his property, but the Levy defendants agreed to convey the Schnackenberg property to Greenberg "as is" for $385,000, and the sale was completed in November 2015.
After Greenberg ejected an individual from the property in dispute, plaintiffs commenced this action containing 11 causes of action that, in sum and substance, concern a boundary dispute with Greenberg over the Schnackenberg property. Namely, against all defendants, plaintiffs sought to quiet title as well as to settle a boundary line and asserted additional causes of action sounding in [*2]estoppel, mutual mistake and a declaratory judgment. Plaintiffs also asserted causes of action for trespass and ejectment against Greenberg and for breach of contract, breach of the covenant against encumbrances and fraud against the Levy defendants. In response, Greenberg asserted a counterclaim to quiet title against plaintiffs and five other cross-claims against the Levy defendants. The Levy defendants separately answered, asserting a counterclaim against plaintiffs to recover the expenses incurred from this litigation and cross-claims for contribution and indemnification against Greenberg.
Thereafter, the Levy defendants and Greenberg separately moved for summary judgment seeking, among other things, dismissal of plaintiffs' complaint in its entirety. Plaintiffs opposed and cross-moved seeking to, among other things, disqualify the Levy defendants' attorney. In an April 2022 order, Supreme Court partially granted defendants' motions and dismissed several of plaintiffs' causes of action. The court also denied plaintiffs' cross-motions to preclude expert testimony and to disqualify the Levy defendants' attorney.[FN1] All parties then moved to reargue, asserting that Supreme Court had misapprehended the relevant facts, and plaintiffs separately moved to amend their pleadings. Upon reargument, the court granted defendants' motions to reargue and denied plaintiffs' motion for same in an October 2022 order. Specifically, the court found proper title to the Schnackenberg property rested with Greenberg, thus dismissing plaintiffs' entire complaint. Finally, the court denied plaintiffs' motion to amend their pleadings. Plaintiffs appeal from both the April 2022 order and the October 2022 order.[FN2]
The crux of this dispute concerns the location of the western and southern boundary lines of the Schnackenberg property that directly abut the Sunnyview Farms parcel and, essentially, the respective ownership of certain cultivated farm fields. Accordingly, we first turn to the claims to quiet title, in which "the [party seeking relief] bears the burden of proving his or her claim by a preponderance of the evidence" (Mohonk Preserve, Inc. v Ullrich, 119 AD3d 1130, 1131 [3d Dept 2014]; see Sasscer v Vesey, 211 AD3d 1400, 1403 [3d Dept 2022]). "In the context of a boundary dispute, deeds must be construed in accordance with the parties' intent and extrinsic evidence is admissible to clarify any ambiguities" (Mohonk Preserve, Inc. v Ullrich, 119 AD3d at 1131 [citations omitted]; accord Mohonk Preserve, Inc. v Pardini, 130 AD3d 1205, 1205 [3d Dept 2015], lv denied 26 NY3d 912 [2015]). Said differently, in line with well-recognized contract principles, "[t]he meaning of the deed is to be determined from its language, and extrinsic evidence may be taken into account only when that language is ambiguous" (Matter of Flaherty, 65 AD3d 745, 746 [3d Dept 2009]; see Loch Sheldrake Assoc. v Evans, 306 NY 297, 304-305 [1954]; Jankoski v Lake Forest Acres Homeowners, Inc., 107 AD3d [*3]1367, 1368 [3d Dept 2013]; see also Ficel Transp., Inc. v State of New York, 209 AD3d 1153, 1155 [3d Dept 2022]; Red-Kap Sales, Inc. v Northern Lights Energy Prods., Inc., 94 AD3d 1281, 1282 [3d Dept 2012]).
The history of the Schnackenberg property is reflected in the deeds submitted in support of the Levy defendants' motion. Morris Levy first acquired the Schnackenberg property from Nathan McCalla in 1974 through his company Adam R. Levy & Father Enterprises, Inc., and the deed from that conveyance (hereinafter the McCalla deed) contains a long-form description of the Schnackenberg property that, in relevant part, describes the bounds of the 122-acre parcel by reference to adjoining lands. At the time Simon Levy and Daniel Levy bought out their brother Adam Levy's interest, a 2006 deed was filed conveying the property from Adam R. Levy & Father Enterprises, Inc. to Adam R. Levy & Father Enterprises, Inc. and Levy Leverage, LLC as tenants in common. That deed identified the Schnackenberg property using the same long-form description contained in the McCalla deed. In 2014, after the parties entered into a settlement agreement, the property was transferred to Levy Leverage, LLC as the sole owner. That deed again stated that it was the same premises with the same boundaries as the 2006 deed and utilized the long-form deed description that was provided for in the McCalla deed. Finally, in 2015, the property was deeded from Levy Leverage, LLC to Greenberg, which identified the property as that outlined in the 2006 and 2014 deeds using the legal description that is identical to the description contained in the 2006 deed, with the addition of a modernized description.
As to the identified boundaries, a survey was commissioned and performed by Daniel Russell, a licensed professional land surveyor, in furtherance of the sale from the Levy defendants to Greenberg. In his affidavit submitted in support of Greenberg's motion, Russell explains that he performed a survey on the Schnackenberg property in the spring of 2015 and, although it was difficult to find the boundaries given the description in the deed, he nonetheless was able to determine a boundary while following the rules and procedures that govern the surveying profession. In preparing the survey, Russell reviewed the chain of title and relevant deed descriptions as well as the existing maps, surveys, plots, certain public records, as well as highway appropriation maps, historical fly-over overlays and easement maps prepared by a utility company, New York State Electric & Gas. Russell also spoke with descendants of the farmers that formerly owned the Schnackenberg property and, as indicated in his survey, the former owners of the parcels that made up Sunnyview Farms, as well as the descendants of the owners of nearby properties. Russell further stated that the 2014 tax map was incorrect and could not be used to establish the boundary lines of the property as it is common for tax maps to be incorrect[*4]. Russell concluded that the survey accurately identified the boundaries of the Schnackenberg property "within a reasonable degree of surveying certainty." Altogether, we find that "[t]his proof was sufficient to demonstrate that the [accurate] boundary line[s] [of the Schnackenberg] property [were] as delineated in [Russell's] survey map, thereby shifting the burden of proof to plaintiff[s] to show otherwise" (Kennedy v Nimons, 121 AD3d 1229, 1230-1231 [3d Dept 2014]; see Sasscer v Vesey, 211 AD3d at 1403; Bergstrom v McChesney, 92 AD3d 1125, 1126 [3d Dept 2012]).
Plaintiffs' opposition is predicated on their assertion that Supreme Court erred in determining that the deed description was unambiguous. In this respect, plaintiffs rely on extrinsic evidence that they suggest establishes a different boundary for the Schnackenberg and Sunnyview properties that plaintiffs and the Levy defendants had acquiesced to. Upon our review, we concur with Supreme Court's determination that the deed language was unambiguous. "A deed description is adequate so long as it allows the property to be located, even if an actual survey is required in order to do so. The question is not whether there are errors in the description, but whether the land can be identified with reasonable certainty notwithstanding the errors" (Town of Brookhaven v Dinos, 76 AD2d 555, 561 [2d Dept 1980] [citations omitted], affd 54 NY2d 911 [1981]; see McConnell v Wright, 151 AD3d 1525, 1526 [3d Dept 2017]). In the absence of any ambiguity, "extrinsic evidence may not be used to vary a boundary description or call set forth in a deed" (Matter of Save the Pine Bush v Town Bd. of Town of Guilderland, 272 AD2d 689, 693 [3d Dept 2000] [internal quotation marks and citation omitted]; see Andersen v Mazza, 258 AD2d 726, 727 [3d Dept 1999]). Notably, a deed description is not rendered ambiguous merely based upon the absence of natural objects or artificial landmarks and, in this case, the language contained in the deed description sufficiently identified the metes and bounds of the property by reference to adjoining parcels (see generally Hall-Mark Realty Corp. v McGunnigle, 253 NY 395, 397 [1930]; Schweitzer v Heppner, 212 AD2d 835, 839 [3d Dept 1995]; 1 NY Jur 2d, Adjoining Landowners § 116), which enabled Russell to perform a survey utilizing recognized surveying methods (compare Eliopoulous v Lake George Land Conservancy, Inc., 50 AD3d 1231, 1232-1233 [3d Dept 2008]). To that end, we find that plaintiffs' contentions alone concerning the adequacy of the Russell survey do not cast doubt on its accuracy and, in turn, plaintiffs have failed to offer any proof rebutting the location of the boundary line as set forth in the survey, let alone proof establishing that the appropriate property line conveyed by the deed is represented by the boundaries indicated in the tax maps (see generally Sasscer v Vesey, 211 AD3d at 1403; compare Nowicki v Espersen, 63 AD3d 1696, 1697 [4th Dept 2009]). Accordingly, [*5]plaintiffs' proof fails to establish an issue of material fact as to the boundary line, and the lack of ambiguity in the deed renders any "evidence of [the] unexpressed, subjective intentions of the parties . . . irrelevant" (Margetin v Jewett, 78 AD3d 1486, 1488 [4th Dept 2010]; compare Schweitzer v Heppner, 212 AD2d at 838; Start v Trudell, 155 AD2d 829, 832 [3d Dept 1989]).
In light of the foregoing, Supreme Court properly dismissed plaintiffs' causes of action to quiet title, as well as those asserting a boundary line by agreement and estoppel (see Pickard v Campbell, 207 AD3d 1105, 1108 [4th Dept 2022], lv denied 39 NY3d 910 [2023]; Torpy's Pond & Outdoor Club, Inc. v DuSell, 198 AD3d 1218, 1222 [3d Dept 2021]; X & Y Dev. Group, LLC v Epic Tower, LLC, 196 AD3d 732, 733 [2d Dept 2021], lv dismissed 37 NY3d 1140 [2022]). Plaintiffs' claims seeking a declaratory judgment, ejectment, trespass and breach of a covenant against encumbrances, based upon language in a later-filed corrective deed, were also properly dismissed on account of the determination as to the rightful ownership of the Schnackenberg property (see Sasscer v Vesey, 211 AD3d at 1405; X & Y Dev. Group, LLC v Epic Tower, LLC, 196 AD3d at 733). Moreover, plaintiffs' claims alleging a breach of contract were extinguished by the deliverance of the deed pursuant to the doctrine of merger (see Pickard v Campbell, 207 AD3d at 1108; Perez-Faringer v Heilman, 95 AD3d 853, 854 [2d Dept 2012]; Arnold v Wilkins, 61 AD3d 1236, 1236 [3d Dept 2009]).
As to plaintiffs' remaining claims, "[a] party seeking reformation must establish, by clear and convincing evidence, that the writing in question was executed under mutual mistake or unilateral mistake coupled with fraud" (Vollbrecht v Jacobson, 40 AD3d 1243, 1245 [3d Dept 2007] [internal quotation marks and citations omitted]). In order to obtain recission on the basis of mutual mistake, "it must be shown[, by clear and convincing proof,] that the mistake in question is mutual, substantial, material and exists at the time the contract is entered" (Rodriguez v Mower, 56 AD3d 857, 858 [3d Dept 2008]; see Shults v Geary, 241 AD2d 850, 852 [3d Dept 1997]). Moreover, "the merger doctrine does not bar a cause of action based on mutual mistake" (Larsen v Potter, 174 AD2d 801, 802 [3d Dept 1991]). The record before us reflects that both Simon and Daniel Levy understood that the parcel to be conveyed with respect to the Schnackenberg property would ultimately be what was indicated in the deed effectuating that conveyance. Specifically, Simon Levy acknowledged during his deposition that the boundaries of the Schnackenberg property trace back to the description in an 1895 deed and are the same boundaries set forth in the 2014 deed under which Daniel Levy took ownership of the property. Neither Simon Levy's conflicting testimony that he understood that the tax maps were representative of the relevant boundary line nor the communications from the Levy defendants' counsel [*6]concerning the parties' understanding of the boundary lines, which occurred after the deed was executed, are sufficient to create a triable issue of fact that the parties were both mistaken at the time they executed the deed, or that the tax map was "exactly what was really agreed upon between the parties" (Shults v Geary, 241 AD2d at 852 [internal quotation marks and citations omitted]; see Williams v Sowle, 209 AD3d 1165, 1168 [3d Dept 2022]).[FN3] Accordingly, we find that plaintiffs have not raised a triable issue of material fact on this claim.
As to the allegation of fraud, it is similarly true that the merger doctrine would not bar such a claim (see Lawlor v Engley, 166 AD2d 799, 800 [3d Dept 1990]). Nonetheless, we find that plaintiffs have failed to raise a material question of fact to withstand the Levy defendants' motion. Simon Levy acknowledged that the parties intended to convey the land as provided by the deed. That Simon Levy later represented that he believed that he was retaining all arable farm land from the settlement does not demonstrate that the Levy defendants misrepresented that fact or that plaintiffs relied upon any material misrepresentation, particularly in light of their own understanding of the significance of the deed language (see Vollbrecht v Jacobson, 40 AD3d at 1245; see also Hess v Baccarat, 287 AD2d 834, 837 [3d Dept 2001]). Accordingly, we find that the remainder of plaintiffs' claims predicated on mutual mistake and fraud were properly dismissed (see Williams v Sowle, 209 AD3d at 1168; see also Timber Rattlesnake, LLC v Devine, 117 AD3d 1291, 1293 [3d Dept 2014], lv denied 24 NY3d 904 [2014]; compare Carpenter v Morrette, 36 AD3d 1115, 1117 [3d Dept 2007]).
We are unpersuaded by plaintiffs' remaining contentions. First, we find no abuse of discretion in Supreme Court's determination to deny plaintiffs' motion to disqualify the Levy defendants' counsel. As plaintiffs suggest, counsel possessed extrinsic evidence as to the intention of the parties concerning the relevant boundary line; however, the significance of such evidence is relevant only if the language in the deed was ambiguous (see generally Mau v Schusler, 124 AD3d 1292, 1294-1295 [4th Dept 2015]). As we have already determined that the language in the deed describing the Schnackenberg property is unambiguous, such evidence is immaterial. Further, we agree with Supreme Court that any further information possessed by counsel pertaining to the remaining claims could be obtained from other sources (see Van Ryn v Goland, 189 AD3d 1749, 1753 [3d Dept 2020]; Levy v 42 Dune Rd., LLC, 162 AD3d 651, 653 [2d Dept 2018]).
Finally, we find no merit to plaintiffs' contention that they should be permitted to amend their complaint, which was nearly four years old at the time of their request. "A trial court's determination regarding a motion to amend will not be disturbed on appeal absent an abuse of discretion" (Tardi v Casler-Bladek, 216 AD3d 1267, 1271 [3d Dept 2023[*7]] [internal quotation marks and citation omitted]). Supreme Court's denial of the motion to amend, heard alongside defendants' motion for reargument, was predicated on its determination that the substantive merits of the amendment were based upon the facts that the court determined it misapprehended or misconstrued in its original decision — namely, whether the Levy defendants ever owned the Schnackenberg property. As we have concluded that the court's determination on reargument to dismiss the entirety of plaintiffs' complaint was appropriate, we find no abuse of discretion in the related determination to deny the request to amend. Plaintiffs' remaining contentions on this appeal, to the extent not addressed, have been considered and found without merit.
Egan Jr., J.P., Pritzker, Fisher and Powers, JJ., concur.
ORDERED that the order entered April 8, 2022, to the extent that it is not superseded, is affirmed, without costs.
ORDERED that the order entered October 3, 2022 is affirmed, without costs.

Footnotes

Footnote 1: Supreme Court denied the Levy defendants' motion regarding all the cross-claims alleged by defendant Greenberg except for the cause of action for fraud, which was dismissed. The court also granted that part of Greenberg's motion seeking to dismiss all of the Levy defendants' cross-claims against him.
Footnote 2: In relevant part, Supreme Court's prior denial of defendants' motions seeking dismissal of plaintiffs' complaint as to the first, fifth, sixth and ninth causes of action was superseded by the court's October 2022 order granting reargument and dismissing the entirety of plaintiffs' complaint.

Footnote 3: The differences in acreage between the assignment agreements and the deeds are of no moment, particularly considering the language in the assignment agreement pertaining to the Schnackenberg property in which the parties acknowledged that the conveyances concerned properties as described in the respective deeds. Moreover, the Russell survey notes that the total acreage of the Schnackenberg property as identified in the survey is relatively consistent with the acreage identified in the Schnackenberg property deed description, which was known to the parties (see generally Shattuck v Laing, 124 AD3d 1016, 1019 [3d Dept 2015]; 1 NY Jur 2d, Adjoining Landowners § 78).